UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEVIN LEWIS, | No. 1:21-cv-01671-NLH-AMD |
| Plaintiff, | **OPINION** |
| v. | |
| NEW JERSEY DEPARTMENT OF CHILDREN AND FAMILIES, THE DIVISION OF CHILD PROTECTION AND PERMANENCY, CARMEN DIAZPETTI, AS DIRECTOR OF DCP&P/ASSISTANT COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF CHILDREN AND FAMILIES ("DCF"), CHRISTINE NORBUT BEYER, AS THE COMMISSIONER OF DCF, JENNIFER MALLOY, IN HER INDIVIDUAL CAPACITY, ROSEMARY ORTIZ, IN HER INDIVIDUAL CAPACITY, JASMINE PETERS, IN HER INDIVIDUAL CAPACITY, SHELIA WALDERAMA, IN HER INDIVIDUAL CAPACITY, CHINUSO AKUNNE, IN HIS INDIVIDUAL CAPACITY, BRIAN EIG, IN HIS INDIVIDUAL CAPACITY, STEPHANIE LANASE, IN HER INDIVIDUAL CAPACITY, MELISSA MCCAUSLAND, IN HER INDIVIDUAL CAPACITY, DR. LEE AND ASSOCIATES, AND LAURALIE INGRAM, | |
| Defendants. | |

**APPEARANCES:**

OLUGBENGA O. ABIONA
1433 SOUTH 4TH STREET
PHILADELPHIA, PA 19147

　　　　*On behalf of Plaintiff*

1

```
JOHN CORNELL FULLER
STEPHANIE RESNICK
COREY M. SCHER
FOX ROTHSCHILD LLC
2000 MARKET STREET - 20TH FLOOR
PHILADELPHIA, PA 19103

ARTHUR J. MURRAY
ALTERMAN & ASSOCIATES, LLC
8 SOUTH MAPLE AVENUE
MARLTON, NJ 08053
```

    *On behalf of Melissa McCausland*

```
MICHAEL R. ABBOTT
ERNEST F. KOSCHINEG, III
CIPRIANI & WERNER, PC
450 SENTRY PARKWAY - STE 200
BLUE BELL, PA 19422
```

    *On behalf of Brian Eig*

```
BRETT JOSEPH HAROLDSON
NEW JERSEY DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
25 MARKET ST
PO BOX 116
TRENTON, NJ 08625
```

    *On behalf of the State Defendants and Dr. Lanase*

```
RICHARD M FLYNN
FLYNN & ASSOCIATES
439 MONMOUTH STREET
GLOUCESTER CITY, NJ 08030
```

    *On behalf of Lauralie Ingram*

**Hillman**, District Judge

    This matter comes before the Court on three motions to dismiss by various defendants (ECF 35, 41, 65) as well as a

2

motion for judgment on the pleadings by another (ECF 45).  For the reasons stated below, the Court will grant all four motions.

## BACKGROUND

The instant matter arises out of Plaintiff's custody matter over his children in the State of New Jersey.  Plaintiff alleges that on May 16, 2016, a caseworker from the Division of Child Protection and Permanency ("DCPP"), a division of the New Jersey Department of Children and Families ("DCF"), came to his house unannounced and advised him that a complaint had been made to DCPP about Plaintiff's care of his three children.  (ECF 1 at 6).  The caseworker asked to speak to Plaintiff's children, but Plaintiff refused, saying that he wanted to speak to a lawyer first.  (Id.)  The next day, when Plaintiff went to pick his children up from school, he was greeted by police officers who advised him that his children had been removed from his custody by DCPP for their safety.  (Id.)  Plaintiff alleges that his children were placed with his ex-wife, Lauralie Ingram, who falsely accused him of mistreating his children and who unduly influenced his children into giving false statements against him to investigators.  (Id. at 6-10).

Plaintiff states in his complaint that because of these false statements, he did not get to see his children for 90 days following their removal form his custody on May 17, 2016.  (Id. at 6).  Plaintiff states that DCPP instituted a proceeding

3

against him in New Jersey state court and that at a hearing on June 30, 2017 the judge presiding over that matter found by a preponderance of the evidence that Plaintiff did not abuse or neglect his children. (Id. at 7). Plaintiff alleges that DCPP continually made false accusations against him and that one of its caseworkers called the police that he was "casing" their office building. (Id.) He also argued that that same caseworker threatened one of his children during one of their visits with the children. (Id.)

Plaintiff also alleges that his children were treated improperly while in the care of Plaintiff's ex-wife, including that his ex-wife's boyfriend looked at his children in the shower and the DCPP refused to investigate. (Id.) Plaintiff alleges that his children were generally mistreated and did not thrive while under DCPP's supervision. (Id. at 7-9). Also integral to Plaintiff's complaint are his allegations that the medical providers involved in his case violated his rights. (Id. at 9-10). He asserts that the doctor retained by DCPP to complete his psychological evaluation, Dr. Eig, provided an "improper diagnosis" so that it could be used in evidence against him and that Dr. Eig had provided fabricated evidence to aid in DCPP investigations. (Id.) Plaintiff also alleged that the two doctors who evaluated his children in the context of the

4

custody proceedings, Dr. Lanase and Dr. McCausland, also provided false evaluations to aid the DCPP. (Id.)

On February 1, 2021, Plaintiff filed the instant complaint, containing six counts. (See generally id.) Counts 1 through 4 assert claims for violation of Plaintiffs constitutional rights under 42 U.S.C. § 1983. (Id.) Count 1 and 2 seeks relief for purported violations by the caseworkers involved in Plaintiff's custody matter.[1] (Id.) Count 3 seek relief for violations from DCF and DCPP through their Commissioner Carmen Diaz-Petti and Deputy Commissioner/Director Christine Norbut Beyer. (Id.) Count 4 is also against the caseworkers, but also alleges a violation of Plaintiff's rights by Drs. Eig, Lanase, and McCausland. (Id.) Count 5 alleges violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-1, et seq. ("NJCRA"), against the caseworker defendants and the doctors. (Id.) Finally, in Count 6, Plaintiff alleges malicious abuse of process by his ex-wife. (Id.)

On April 29, 2021, Dr. Eig filed a motion to dismiss arguing that Plaintiff failed to state a claim against him under § 1983. (ECF 35). On May 14, 2021, the caseworkers along with DCF, DCPP, Commissioner Diaz-Petti and Commissioner Beyer (the "State Defendants") moved to dismiss the counts against them,

---

[1] The caseworkers are Jennifer Malloy, Rosemary Ortiz, Jasmine Peters, Shelia Walderama and Chinuso Akunne.

5

arguing that the Eleventh Amendment bars some of Plaintiff's claims, the caseworks are not "persons" amenable to suit under § 1983, the caseworkers are entitled to qualified immunity, the statute of limitations has run, Plaintiff fails to state a claim under the Fifth Amendment, and that Plaintiffs requests for declaratory judgment should be denied as the State Defendants did not violate the Constitution.  (ECF 41). Dr. Lanase filed a motion to dismiss on July 27, 2021, making analogous arguments as those made by the State Defendants.  (ECF 65).  Rather than moving to dismiss, Dr. McCausland answered the complaint on March 31, 2021 (ECF 23) and subsequently moved for a judgment on the pleadings on June 4, 2021, contending that Plaintiff's claims against her were time barred by the statute of limitations (ECF 45).  Plaintiff opposed all of the motions.  The Court reviews the motions against this backdrop.

## DISCUSSION

### A. Subject Matter Jurisdiction

This Court exercises subject matter jurisdiction over this matter pursuant to 23 U.S.C. § 1331 and § 1367.

### B. Legal Standard of a Motion for Motion to Dismiss and Judgment on the Pleadings

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court

6

must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant

8

attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

A motion for judgment on the pleadings is governed by Rule 12(c). Ellaisy v. City of Atl. City, 2021 WL 4473139, at *2 n.4 (D.N.J. Sept. 30, 2021). Fed. R. Civ. P. 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." In analyzing a Rule 12(c) motion, a court applies the same legal standards as applicable to a motion filed pursuant to Rule 12(b)(6). Turbe v. Gov't of V.I., 938 F.2d 427, 428 (3d Cir. 1991). Therefore, the in analyzing the Dr. McCausland's motion for judgment on the pleadings, the Court will proceed in its analysis in the same fashion as it will for the motions to dismiss.

**C. Analysis**

Though the State Defendants, Dr. Lanase, and Dr. McCausland offer multiple bases on which they contend that their motions should prevail, the Court need not look further than the arguments on the statute of limitations. Because the Court

finds that the statute of limitations for Plaintiff's § 1983 and NJCRA claims have expired, the Court need not reach the other arguments.  The statute of limitations for § 1983 and a NJCRA claim is two years.  Parodi v. McLaughlin, 2009 WL 197575, at *2 (D.N.J. Jan. 26, 2009) ("The statute of limitations on claims of federal civil rights violations pursuant to § 1983 is borrowed from the state personal injury statute of limitations, which is two-years in New Jersey."); Bullock v. Borough of Roselle, 2018 WL 4179481, at *9 (D.N.J. Aug. 31, 2018) ("Like other federal and state courts before me, I conclude that NJCRA, like § 1983, is subject to the State's general two-year personal injury statute of limitations.")  Therefore, given that Plaintiff filed this complaint on February 1, 2021, in order for his claims to still be viable they must have accrued on or after February 1, 2019.

The complaint is vague about the exact timing of the events from which Plaintiff's claims stem, but it alleges that he was harmed by the State Defendants by the removal of his children from his care in May 2016 until August 2016, when they were returned to his care.  Therefore, at the very latest, the statute of limitations on Plaintiff's claims began to run in August 2016 and would have run out in August 2018.  Plaintiff does not mention it in his complaint, but his oppositions to the motions to dismiss point to another action that he filed in on

10

May 17, 2018 before this Court on substantially the same issues. (Dkt. 1:18-cv-09397-NLH-KMW, ECF 1).

Essentially, Plaintiff tries to tie the instant complaint back to the action he filed in 2018. (See ECF 59 at 8-9). More specifically, Plaintiff notes that the Court dismissed his 2018 action without prejudice to refile in light of ongoing custody matters in New Jersey Superior Court. (Dkt. 1:18-cv-09397-NLH-KMW, ECF 17). Plaintiff's contention is that that dismissal without prejudice of the 2018 action "provides that the statute of limitation for Plaintiff to assert these claims against Defendants would not start to run until the date the parallel state proceeding was completed." (ECF 59 at 9). Not so.

The Third Circuit has made clear that a dismissal without prejudice is not equivalent to a stay and does not toll the statute of limitations. Brennan v. Kulick, 407 F.3d 603, 606 (3d Cir. 2005) ("A 'statute of limitations is not tolled by the filing of a complaint subsequently dismissed without prejudice,' as 'the original complaint is treated as if it never existed.'") (quoting Cardio-Medical Assocs. v. Crozer-Chester Med. Ctr., 721 F.2d 68, 77 (3d Cir.1983)); see also Amor v. Dodds, 2009 WL 3720644, at *6 (M.D. Pa. Nov. 4, 2009) ("[The plaintiff] intimates that because she views the instant complaint as an amendment of those prior complaints her claims are not barred by the statute of limitations. However, the instant complaint is

11

not an amendment of any prior complaints. This is a completely separate case. Thus, the plaintiff can not rely on prior cases in the application of the statute of limitations.")  Therefore, Plaintiff's complaint is time barred by at minimum two and a half years.[2]

Even if the Court were to consider Plaintiff's argument as one for equitable tolling, Plaintiff would still not prevail. First, Plaintiff cites no law, and the Court is unaware of any, that dismissal on Younger abstention grounds – the basis for the Court's earlier dismissal – provides for equitable tolling.  Nor would the facts of this case support equitable tolling even if the doctrine applied.  Plaintiff waited until May 17, 2018 to bring his first case, two years after he was first deprived of custody in May of 2016, exhausting virtually all of the statute of limitations at that time.  He then waited until February 1, 2021 to bring the instant action, some sixteen months after September 2019, the date his custody matter concluded in New Jersey Superior Court.  For equitable tolling to apply, a party must be vigilant.  Ross v. Varano, 712 F.3d 784, 799 (3d Cir. 2013) (holding that a party must show "reasonable diligence" in

---

[2] Plaintiff does recount in this complaint interactions with caseworkers as late as April 2018. (ECF 1 at 8). However, the complaint does not connect those interactions in the any of the counts. In any case, even if Plaintiff's claims accrued in December 2018, they are still time-barred.

12

pursuing their claims in order to be entitled to equitable tolling); Miller v. Beneficial Mgmt. Corp., 977 F.2d 834, 845 (3d Cir. 1992) (holding that a party must demonstrate "prompt attempts to vindicate his rights" and that equitable tolling only provides an exception where another party's acts or omissions induced the party's failure to do so).

Even if Plaintiff thought that the statute of limitations was tolled until September 2019, waiting sixteen months after that date to file a claim already over four and a half years old is not the vigilance equitable tolling requires.

Plaintiff, though admittedly his argument is unclear, seems to argue in the alternative that the proper date to view the accrual of his injuries is in September 2019, when his custody matter concluded in New Jersey Superior Court. (ECF 59 at 10). He cites to Franklin v. Douglas County Dist. Ct., 638 Fed. Appx. 691, 692 (10th Cir. 2015) for this proposition. Franklin is completely inapposite as it dealt with the filing of second suit alleging constitutional violations in a divorce proceeding and did not involve a defense of the statute of limitations at all. Id. More importantly, the Court does not agree with Plaintiff's assessment of the date his injuries accrued. A statute of limitations generally begins to run on the date of the injury. Rivera v. Trenton State Prison, 2021 WL 5322355, at *2 (D.N.J. Nov. 16, 2021) ("Section 1983 claims arising out of New Jersey

13

are subject to a two-year statute of limitations which generally accrues at the time of the alleged injury.") Courts have made clear that in the context of custody proceedings, the injury occurs when the custody order is entered and that further orders do not equate to ongoing violations. See Edelglass v. New Jersey, 2015 WL 225810, at *16-18 (D.N.J. Jan. 16, 2015), aff'd sub nom. Allen v. DeBello, 861 F.3d 433 (3d Cir. 2017) (accepting that the plaintiffs custody claims accrued when the children were removed by court order and further orders of the court did not constitute further violations). Plaintiff alleges that he was deprived of custody between May and August 2016, not September 2019. By the terms of his own complaint, Plaintiff's claims accrued no later than August 2016.[3]

There is simply nothing in this Court's April 25, 2019 opinion, declining jurisdiction on abstention grounds, that could be fairly read to create a new, personal, accrual date for Plaintiff's § 1983 claims nor does this Court have such power.[4]

---

[3] It is not clear to the Court based on Plaintiff's vague pleading when in that window between May 2016 and August 2016 that a custody order was entered.

[4] The law in the Third Circuit, as well as in others, is clear that a dismissal without prejudice because of abstention does not toll the statute of limitations. Wyatt v. Keating, 130 F. App'x 511, 515 (3d Cir. 2005) ("Here, a plaintiff in Wyatt's situation could have filed his § 1983 claim in federal court immediately after discovering the alleged constitutional violations and then the District Court could have dismissed the claims without prejudice or stayed proceedings while the

14

As noted above, Plaintiff seems to assert he should have four years (May 2016 through May 2018 and presumably September 2019 through September 2021) to bring his § 1983 claims when all other plaintiffs are governed by a two-year statute of limitations.  There is no basis in law or equity for such an extraordinary result.  The April 25, 2019 Opinion and Order simply held that such claims were not justiciable in federal court while the state proceedings remained ongoing, a forum where Plaintiff was free to attempt to vindicate his claims of violations of his civil rights.[5]  Because the statute of limitations has run on Plaintiff's claims against the State

---

plaintiff pursued his state remedies if abstention was found to be required[.]"); see also Donahue's Pers. Care I v. Pennsylvania, 2012 WL 4926366, at *3 (W.D. Pa. Oct. 16, 2012) ("Under the circumstances, the Court of Appeals for the Third Circuit instructs that this Court may either dismiss Plaintiffs' claims without prejudice, or stay the action pending resolution of the state proceedings."); Eidson v. State of Tennessee Dep't of Children's Servs., 510 F.3d 631, 638 (6th Cir. 2007) ("The district court accepted the notion that a federal court would have been constrained to abstain from proceeding with plaintiff's § 1983 claims during the pendency of the juvenile court proceedings, but held this likelihood alone did not toll the running of the statute of limitations and did not relieve plaintiff of the responsibility to timely file his claims."); Almazan v. 1st 2nd Mortg. Co. of NJ, No. 10-CV-01336 DMCJAD, 2011 WL 2670871, at *6 (D.N.J. June 2, 2011), report and recommendation adopted, 2011 WL 2652149 (D.N.J. June 30, 2011) (avoiding the statute of limitations issue by directing the parties to refile a complaint before the statute of limitations would have run).

[5] The parties in the 2018 action did not argue that the matter should have been stayed instead of dismissed. (Dkt. 1:18-cv-09397-NLH-KMW, ECF 4, 13, 16).

Defendants, Dr. Lanase, and Dr. McCausland, the Court must dismiss the claims against them.

The Court will also briefly address Dr. Eig's motion to dismiss separately. Dr. Eig's motion to dismiss did not raise a statute of limitations defense and since it is an affirmative defense, the Court will not consider it on its own. Id. at *16). ("The statute of limitations in an affirmative defense, under Federal Rule 8(c).") Nonetheless, the Court agrees with Dr. Eig's arguments that Plaintiff's vague and conclusory allegations fail to state a claim against him and therefore must be dismissed. Plaintiff names Dr. Eig in Count 4, for violation of his due process rights with remedies under § 1983, and in Count 5, for violation of the NJCRA. (ECF 1 at 14-16).

To state a claim for violation of due process under § 1983, a plaintiff must either plead violation of the procedural or substantive component of the protection. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. It is well established that the Due Process Clause contains both a procedural and substantive component. American Exp. Travel Related Services, Inc. v. Sidamon-Eristoff, 669 F.3d 359, 366 (3d Cir. 2012).

16

To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to him did not provide "due process of law." Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (citation omitted).

To state a substantive due process claim, a plaintiff must show: (1) he was deprived of a protected property interest; and (2) a state actor acted with a degree of culpability that shocks the conscience. Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008); Maple Prop., Inc. v. Twp. of Upper Providence, 151 F. App'x 174, 179 (3d Cir. 2005) (finding conscience-shocking behavior where the misconduct involves corruption, self-dealing, or a concomitant infringement on other fundamental individual liberties).

To prevail under the Equal Protection Clause, Plaintiff must establish that the defendants acted with a discriminatory purpose and that their action had a discriminatory effect on Plaintiff. See, e.g., McCleskey v. Kemp, 481 U.S. 279, 292 (1987).[6]  Plaintiff's claim under the NJCRA must be analyzed

---

[6] Plaintiff also cites to the First and Fourth Amendments but couches them as violations of "due process and equal protection."  (ECF 14).  Count 4 only complains of due process

17

under the same lens as the § 1983 claims.  Monticciolo v. Robertson, 2017 WL 4536119, at *20 (D.N.J. Oct. 11, 2017) ("The NJCRA was modeled after § 1983, and thus, courts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983.") (internal quotation marks omitted).

Plaintiff's pleading falls so far short of these standards that it is not possible for the Court to map the complaint's shortcomings onto the required elements for each of the claims here.  Plaintiff's conclusory pleading does not even tie Dr. Eig's alleged misconduct to specific actions or dates.  The complaint merely states that Dr. Eig "inexplicably recommended that the children be placed" with Plaintiff's ex-wife and that Dr. Eig and his medical practice "have provided fabricated psychological reports" in other DCPP cases. (ECF 1 at 9).  That is not enough. Malleus, 641 F.3d at 563.

The allegations here are so sparse that they do not even comply with the rather straightforward standard of notice pleading under Rule 8.  Watford v. Balicki, 2012 WL 1118663, at *2 (D.N.J. Apr. 3, 2012) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the "grounds" on which the claim rests.") (quoting Phillips

---

and equal protections violations and the citation to the First and Fourth Amendments seems to be an error.

v. County of Allegheny, 515 F.3d 224, 232 (3d Cir.2008)). Because Plaintiff has not plausibly stated a claim against Dr. Eig, the Court will also grant Dr. Eig's motion to dismiss.

## CONCLUSION

For the reasons stated above, the Court will grant the State Defendants', Dr. Eig's and Dr. Lanase's motions to dismiss. It will also grant Dr. McCausland's motion for judgment on the pleadings.

An appropriate Order will be entered.


Date: January 26, 2022          /s Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.